AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 30, 2014

SEAN F. McAVOY, CLERK

| United States of America | ) | |
| --- | --- | --- |
| v. | ) | |
|  | ) | Case No.  4:14-MJ-07099 |
|  | ) | |
| Miguel Contreras | ) | |
| *Defendant* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  07/30/2014  in the county of  Franklin  in the  Eastern  District of Washington, the defendant violated  18  U. S. C. §  841(a)(1) , an offense described as follows:

did knowingly and intentionally possess with intent to distribute 5 grams or more of actual methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. Section 841(a)(1),(b)(1)(B)(viii).

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*William F. Parramore* (signature)

*Complainant's signature*

William Parramore, DEA TFO
*Printed name and title*

☑ Sworn to telephonically and signed electronically.
☐ Sworn to before me and signed in my presence.

*James P. Hutton* (signature)

*Judge's signature*

Date:  07/30/2014

City and state:  Yakima, Washington

JAMES P. HUTTON, U.S. Magistrate Judge
*Printed name and title*



Assigned AUSA: MKD

*United States v. Miguel Contreras*
Complaint Continuation

1. My name is William Parramore and I have been a full time Commissioned Police Officer by the Pasco Police Department since July of 2005. I am currently assigned to the Tri-City Metro Drug DEA Task Force as a Task Force Officer. The Tri-City Metro DEA Drug Task Force investigates crimes involving violations of the Revised Code of Washington, including chapter 69.50, and Title 21, United States Code, Sections 841 and 846, involving the detection and arrest of individuals and organizations engaged in narcotics possession and/or trafficking. I have made numerous arrests of persons for crimes related to narcotics violations, and have worked on several narcotics related investigations and search warrants.

2. On July 22, 2014, United States Magistrate Judge James P. Hutton authorized a search warrant for the premises located at 918 S. 8th Ave, Unit # 1, Pasco, Washington, under case number 4:14-MJ-07090. On July 30, 2014, I was part of the DEA-Metro team that executed the search warrant at that address.

3. Upon entering the apartment, law enforcement located one individual, who was identified Miguel Contreras

4. Law enforcement agents located the following. In the kitchen, agents located a cereal box, which contained a white crystal-like substance, which agents

1

suspected to be methamphetamine.  In a kitchen cabinet, agents located two bindles of a white crystal-like substance, which agents suspected to be methamphetamine.

5. Law enforcement agents also located the following items that, based on my training and experience, I know are associated with the distribution of controlled substances: a digital scale, packaging material, and a cutting agent. These items were all found in the kitchen.

6. Law enforcement agents also located a sawed-off shotgun under the bed, in the bedroom.  The barrel of the shotgun was less than 18 inches.  Based on my training and experience, I am aware that is it illegal to possess this firearm, unless it is registered.

7. Law enforcement agents also located what appeared to a valid social security card, bearing Contreras' name and social security number.  They also located what appeared to be a counterfeit social security card, bearing Contreras' name and a different social security number.

8. Miguel Contreras was read his *Miranda* rights in Spanish by TFO Kirk Nebeker.  Contreras agreed to waive his rights and speak with agents.  He signed a waiver form in Spanish.  During the interview, Contreras provided the

following information. I have not included all information provided during the interview.

9. Contreras stated he moved to that apartment in May of 2014, from Hawaii where he had been working in the corn fields. When first asked, Contreras stated he did not know the people who lived in the apartment before him.

10. Contreras admitted that the shotgun was his. He stated that he bought it 15-20 days prior, from a stranger in Yakima for $180. He was questioned about the barrel and Contreras stated that the barrel had been cut before he bought it. He stated he did not know if it was stolen nor that it was illegal to have a sawed-off shotgun.

11. Contreras was questioned about drugs in the apartment. He denied knowing about any methamphetamine in the apartment. He stated that there was a personal use amount of cocaine, which he bought for approximately $100. He explained to the agents that the cocaine would be located in a trash bag box. Subsequently, the agents located a bindle of cocaine, in a trash bag box. Contreras was shown the cereal box in which the methamphetamine was found. Contreras said the cereal box was already there when he moved in.

12. Contreras stated that he does not know the name of the owner of apartments that he lives in. Contreras stated that he pays the owner $450 a month

in cash. Contreras said he is the only person who has keys and access to the apartment.

13. Contreras stated that the gray Toyota pickup in front of the apartment belongs to him. Contreras explained that he was receiving unemployment benefits under his true name and social security number. However, he could not afford his truck payment on his unemployment benefits. He explained that he went to the Pasco Flea Market and purchased a fake social security card for $70. He admitted he is working under the fake social security number, while receiving benefits under true number.

14. DEA TFO Corral field tested the suspected methamphetamine, which tested presumptively positive for the presence of methamphetamine. The total weight (including the packaging) was 82.3 grams. Based on my training and experience, I believe this amount includes 5 grams or more of actual methamphetamine. I field tested the cocaine, which tested presumptively positive for the presence of cocaine. The total weight (including packaging) was 32.4 grams.

//

//

15. Based on the above facts, I respectfully submit there is probable cause to believe that Miguel Contreras committed the offense of possession with intent to distribute 5 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii).

_____*William F Parramore Jr*_____
William Parramore, Task Force Officer
Drug Enforcement Administration


Subscribed and sworn to before me on this __30__ day of July, 2014.

_*James P Hutton*_
James P. Hutton
United States Magistrate Judge



5